SARA GHAFOURI, OSB #111021
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org

DOMINIC M. CAROLLO, OSB #093057
Carollo Law Group LLC
Mail:   P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com

*Attorneys for Defendant-Intervenors*

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER, CASCADIA WILDLANDS, OREGON WILD,** and **SODA MOUNTAIN WILDERNESS COUNCIL,**<br><br>    Plaintiffs,<br><br>        vs.<br><br>**UNITED STATES BUREAU OF LAND MANAGEMENT,**<br><br>    Defendant,<br><br>        and<br><br>**AMERICAN FOREST RESOURCE COUNCIL**, an Oregon non-profit corporation, and **ASSOCIATION OF O&C COUNTIES**, an unincorporated association,<br><br>    Defendant-Intervenors. | Civil No. 1:23-cv-00519-CL (Lead Case)<br><br>**DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION** |

DEFENDANT-INTERVENORS' RESPONSE IN OPPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

| | |
|---|---|
| **APPLEGATE SISKIYOU ALLIANCE**, | |
| Plaintiff, | Civil No. 1:23-cv-01163-CL (Joined Case) |
| vs. | |
| **UNITED STATES BUREAU OF LAND MANAGEMENT**, | |
| Defendant. | |

DEFENDANT-INTERVENORS' RESPONSE IN OPPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STANDARD OF REVIEW AND LEGAL STANDARD........................................ 2

III.  ARGUMENT ...................................................................................................... 2

    A.  Partial Vacatur is an Appropriate Equitable Remedy.......................................... 2

        1.  The Merits F&R focused on the commercial prescriptions ........................... 2

        2.  The caselaw suggests that this Court must weigh the equities, particularly in
            NEPA cases.................................................................................................... 4

    B.  Full Vacatur of the IVM and Late Mungers Project Decision Records is Not
       Appropriate ..................................................................................................... 5

        1.  The BLM's legal errors related to noncommercial treatments were not serious
            and are easily curable.................................................................................... 6

        2.  Disruptive consequences would result if the noncommercial activities
            were vacated................................................................................................... 8

    C.  The BLM's IVM EA Need Not Be Vacated ...................................................... 9

IV.   CONCLUSION................................................................................................... 11

CERTIFICATE OF COMPLIANCE ........................................................................... 13

CERTIFICATE OF SERVICE ................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*350 Mont. v. Haaland*,
    No. 19-CV-12-M-DWM, 2023 WL 1927307 (D. Mont. Feb. 10, 2023)...................................5

*All. for the Wild Rockies v. Savage*,
    375 F.Supp.3d 1152 (D. Mont. 2019)....................................................................................6

*All. for the Wild Rockies v. U.S. Forest Serv.*,
    907 F.3d 1105 (9th Cir. 2018) ...............................................................................................4

*Allied–Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
    988 F.2d 146 (D.C.Cir.1993) ..............................................................................................4, 5

*Cal. Comtys. Against Toxics v. U.S. E.P.A.*,
    688 F.3d 989 (9th Cir. 2012)................................................................................................4, 9

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*,
    153 F.4th 869 (9th Cir. 2025) ............................................................................................5, 10

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*,
    No. 6:24-CV-01641-MTK, 2026 WL 1346855 (D. Or. May 14, 2026),
    *reconsideration denied,* No. 6:24-CV-01641-MTK, 2026 WL 1998555 (D.
    Or. July 9, 2026) ...................................................................................................................10

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
    No. 06-CV-4884 SI, 2011 WL 337364 (N.D. Cal. Jan. 29, 2011) ...........................................9

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
    36 F.4th 850 (9th Cir. 2022) ..................................................................................................5

*Greater Hells Canyon v. Wilkes*,
    790 F.Supp.3d 1029 (D. Or. 2024) .........................................................................................5

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ..................................................................................................5

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest
    Serv.*,
    No. 3:10–CV–01397–SI, 2012 WL 13042847 (D. Or. Dec. 10, 2012)....................................9

*Mont. Wildlife Fed'n v. Haaland*,
    127 F.4th 1 (9th Cir. 2025) ...............................................................................................4, 5

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*,
  460 F.Supp.3d 1030 (D. Mont. 2020)..................................................................4

*Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*,
  966 F.3d 893 (9th Cir. 2020) .........................................................................6

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  524 F.3d 917 (9th Cir. 2008) .........................................................................5

*Neighbors of the Mogollon Rim, Inc. v. U.S. Forest Serv.*,
  No. 22-15259, 2023 WL 3267846 (9th Cir. May 5, 2023)........................................5

*Pollinator Stewardship Council v. U.S. E.P.A.*,
  806 F.3d 520 (9th Cir. 2015) .........................................................................6

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*,
  605 U.S. 168 (2025)................................................................................2, 5

*Swan View Coal. v. Haaland*,
  No. 22-CV-96-M-DLC, 2024 WL 3219206 (D. Mont. June 28, 2024) .................................10

*WildEarth Guardians v. Steele*,
  545 F.Supp.3d 855 (D. Mont. 2021)....................................................................6

*Wildlands v. Adcock*,
  No. 6:22-CV-00767-AA, 2025 WL 975179 (D. Or. Mar. 31, 2025)......................................7

**Other Authorities**

40 C.F.R. § 1508.27(b) (1978)..........................................................................3

## ACRONYM LIST

| | |
|---|---|
| BLM | Bureau of Land Management |
| DNA | Determination of NEPA Adequacy |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| FLMPA | Federal Land Policy and Management Act |
| FONSI | Finding of No Significant Impact |
| LSR | Late-Successional Reserves |
| NEPA | National Environmental Policy Act |
| NSO | Northern Spotted Owl |

## I.    INTRODUCTION

As demonstrated in Defendant-Intervenors' Objections (ECF No. 113), portions of Magistrate Judge Clarke's Amended Findings and Recommendation (Amended Remedy F&R, ECF No. 109) on remedy extend beyond this Court's ruling on the merits.  *See generally* ECF No. 113.  Only the Ecosystem Resilient-Open and Intermediate commercial treatments of the Integrated Vegetation Management Project for Resilient Lands (IVM Project or Project) and Late Mungers Decision Records should be vacated because those treatments relate to the Federal Land Policy and Management Act (FLPMA) or the National Environmental Policy Act (NEPA) violations identified in Magistrate Judge Clarke's Merits F&R (ECF No. 53), adopted by this Court (ECF No. 69).

Plaintiff Applegate Siskiyou Alliance (ASA), on the other hand, objects to the portions of Magistrate Judge Clarke's recommendation that *are* consistent with this Court's merits holding. *See* ASA Obj. to Am. Remedy F&R (ECF No. 115).  Specifically, ASA objects to the Amended Remedy F&R's recommendation that this Court "should not vacate the small-diameter thinning and prescribed burning components of the IVM Program [Environmental Assessment (EA)] and [Finding of No Significant Impact (FONSI)], such that [the Bureau of Land Management (BLM)] can continue to authorize [(Determinations of NEPA Adequacy (DNA)] disclosing and authorizing site-specific implementation of these activities across the entire IVM Program area" and that this Court should order the BLM to prepare an Environmental Impact Statement (EIS) only for the vacated commercial components of the IVM Project.  ECF 109 at 3; ECF No. 115 at 2, 8–9.  Notwithstanding that the focus of the Merits F&R was on the Ecosystem Resilience-Open and Intermediate commercial treatments under the Project, not noncontroversial and beneficial noncommercial treatments, ASA claims that the entire Project should be vacated due to insufficient analysis under NEPA because that is the "presumptive remedy."  ECF No. 115 at 2.  ASA's objections are inappropriate as a matter of law and would result in disruptive consequences.

Vacatur is not a required outcome.  In the Supreme Court's own words, deficient NEPA

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 1

analyses "may not necessarily require a court to vacate the agency's ultimate approval of a project." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 185 (2025). ASA does not even acknowledge the *Seven County* opinion or how it impacts a district court's vacatur analysis. Courts have discretion to craft equitable remedies in response to an agency error. Here, neither Magistrate Judge Clarke nor this Court identified serious errors pertaining to the IVM Project's noncommercial treatments. ASA was on notice that those noncommercial treatments could begin in 2024 (and actually began in 2025) and has never sought relief from the Court to prevent that work from occurring while this case has been pending. Stipulations and Joint Mot. for Further Proceedings at 3 (ECF No. 55). Disrupting that work now midstream would waste agency resources and risk environmental harm, particularly given that this region is "uniquely and extraordinarily vulnerable to severe wildfire." ECF No. 53 at 2 (citing AR_48418). The caselaw and relevant equities support allowing the portions of the Project that are not directly tied to the identified errors in the Merits F&R to move forward on remand. This aspect of Amended Remedy F&R will allow as much of the "broad program of admirable fire resilience and forest restoration work" to move forward as possible while the BLM remedies its FLPMA and NEPA errors on remand. ECF No. 53 at 2.

## II.    STANDARD OF REVIEW AND LEGAL STANDARD

In addition to the specific discussion below, Defendant-Intervenors incorporate by reference the applicable standard of review and legal standards referenced in their Objections. *See* ECF No. 115 at 10–12.

## III.    ARGUMENT

### A.    Partial Vacatur is an Appropriate Equitable Remedy.

#### 1.    The Merits F&R focused on the commercial prescriptions.

ASA's objections are divorced from Magistrate Judge Clarke's Merits F&R, adopted by this Court, and advocate for an inequitable remedy that is not shared by KS Wild Plaintiffs. *See* ECF No. 69 (adopting ECF No. 53). The focus of Magistrate Judge Clarke's Merits F&R was on

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 2

the two commercial treatments of the IVM Project—Ecosystem Resilience-Open and Intermediate.  First, Magistrate Judge Clarke found that the BLM violated FLPMA by failing to demonstrate compliance with the 20-Year NSO Standard for the Ecosystem Resilience-Open and Intermediate treatments, and rejected ASA's FLPMA claims related to Resource Management Areas.  ECF No. 53 at 16–25.  Second, Magistrate Judge Clarke found that the BLM's preparation of an EA and FONSI violated NEPA by relying on four intensity factors under 40 C.F.R. § 1508.27(b) (1978):  (1) the IVM Project's use of the Ecosystem Resilience-Open and Ecosystem Resilience-Intermediate treatments, which include group selection openings, are "highly controversial"; (2) the effects of the BLM's use of a programmatic framework and the effects of the scale and timing of the IVM Project are "highly uncertain or involve unique or unknown risks"; (3) the BLM's interpretation of the 20-Year NSO Standard and programmatic framework will establish a precedent for other actions; and (4) the BLM violated the 20-Year NSO Standard under FLPMA.  ECF No. 53 at 28–33.  Although the Court also concluded that the use of DNAs and "the scale and timing of the IVM Program's effects remain uncertain as well," ECF No. 53 at 31, there is nothing in the Merits F&R questioning the Project's noncommercial treatments.  For that reason, the Amended Remedy F&R solely and appropriately focused on commercial components of the Project.  *See* ECF No. 109 at 3.  Moreover, the Amended Remedy F&R is consistent with Magistrate Judge Clarke's previous finding that there were beneficial components of the Project—which highlight that the Project "provides for a broad program of admirable fire resilience and forest restoration work" (ECF No. 53 at 2)—and encouraged the parties to see if the "noncontroversial parts of this important forest management project" could move forward.  *Id.* at 35, *id.* at 36 (repeating the desire to ensure that the "noncontroversial components of the [Project] may be implemented without harmful delay").

Defendant-Intervenors explained in their objections that Magistrate Judge Clarke's Amended Remedy F&R inappropriately expanded vacatur to all commercial activities.  *See generally* ECF No. 113.  ASA, however, argues that Magistrate Judge Clarke did not go far enough.  ASA objects that Magistrate Judge Clarke recommends vacating only "commercial

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 3

logging in [Late Successional Reserves (LSR)], while expressly keeping in place the [Project] components dealing with small-diameter thinning and prescribed burning." ECF No. 115 at 2. According to ASA, the Merits F&R "found legal defects in the [Project] that extend beyond commercial logging in LSRs." *Id.* ASA fails to identify, and indeed cannot identify, any findings from the Merits F&R or this Court's Merits Order undermining the Project's noncommercial activities. Instead, ASA characterizes its NEPA concerns as procedural: the Project's "design posed risks to core NEPA principles of public participation and transparency." ECF No. 115 at 11. Nevertheless, ASA argues that the need to conduct an EIS demonstrates that the entire Project is flawed and must be vacated on remand. ECF No. 115 at 6–7. As demonstrated below, it is appropriate for the noncommercial treatments to move forward while the BLM remedies its NEPA analysis on remand consistent with this Court's Order.

> **2.      The caselaw suggests that this Court must weigh the equities, particularly in NEPA cases.**

ASA apparently seeks to turn the presumption of vacatur into a requirement. Merely because vacatur may be the presumptive remedy does not dispense with this Court's obligation to weigh the equities in considering whether vacatur is warranted: "A federal court is not required to set aside every unlawful agency action, and the decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity." *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018) (internal quotation marks omitted). When evaluating whether to vacate an agency action, courts assess "how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Comtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied– Signal, Inc. v. U.S. Nuclear Regul. Comm'n,* 988 F.2d 146, 150–51 (D.C.Cir.1993)). Ultimately, the decision to vacate, partially vacate, or not vacate at all is subject to the district court's "equitable discretion." *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025); *see also N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F.Supp.3d 1030, 1037 (D. Mont. 2020) ("A district court possesses 'broad latitude,' however, in fashioning equitable relief 'when

necessary to remedy an established wrong.'" (quoting *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008)). "Courts generally decline to vacate an agency action when doing so would increase the potential for environmental harm." *350 Mont. v. Haaland*, No. 19-CV-12-M-DWM, 2023 WL 1927307, at *3 (D. Mont. Feb. 10, 2023) (citing *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)).

Multiple cases relied on by ASA in its remedy and objection briefing reflect that no vacatur or partial vacatur is an appropriate outcome. *See, e.g.*, *Neighbors of the Mogollon Rim, Inc. v. U.S. Forest Serv.*, No. 22-15259, 2023 WL 3267846, at *3–*4 (9th Cir. May 5, 2023) (granting partial vacatur when remanding inadequate NEPA analysis); *Greater Hells Canyon v. Wilkes*, 790 F.Supp.3d 1029, 1058 (D. Or. 2024) (partial vacatur); *Mont. Wildlife Fed'n*, 127 F.4th at 52 (overturning vacatur in one of the consolidated cases at issue). ASA relies on pre-*Seven County* caselaw to argue that vacatur flows from a NEPA violation. *See* ECF No. 115 at 3 (citing *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 882 (9th Cir. 2022)). More recently, the U.S. Supreme Court has reinforced that full vacatur is not always the appropriate remedy:: "Even if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project[.]" *Seven Cnty.*, 605 U.S. at 185. Although this case concerns an EA, the Ninth Circuit finds all teachings from the *Seven County* decision "fully applicable" in the context of an EA. *Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, 153 F.4th 869, 903 (9th Cir. 2025).

> **B.     Full Vacatur of the IVM and Late Mungers Project Decision Records is Not Appropriate.**

Under the *Allied-Signal* test, Magistrate Judge Clarke implicitly weighed the equities with respect to the Project's noncommercial treatments.[1] Because the BLM's legal errors are not

---

[1] Both Defendant-Intervenors and ASA object to Magistrate Judge Clarke's rationale for the scope of the recommended vacatur. *See* ECF No. 113 at 13–16; ECF No. 115 at 8. Although Magistrate Judge Clarke's findings under the *Allied-Signal* test were not explicit, Magistrate Judge Clarke's reasoning for partial rather than full vacatur, as ASA requests, is evident from both the Amended Remedy F&R and Merits F&R. Defendant-Intervenors' Objections are

so serious to outweigh the disruptive consequences that will result from ASA's requested relief, full vacatur of the IVM and Late Mungers Decision Records is inappropriate.

### 1.    The BLM's legal errors related to noncommercial treatments were not serious and are easily curable.

The seriousness of an agency's error is gauged by whether it could result in possible environmental harm; whether the agency can offer better reasoning or adopt the same decision on remand by complying with procedural rules; and whether the errors are limited in scope. *See Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 929 (9th Cir. 2020); *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015); *WildEarth Guardians v. Steele*, 545 F.Supp.3d 855, 884 (D. Mont. 2021); *All. for the Wild Rockies v. Savage*, 375 F.Supp.3d 1152, 1156 (D. Mont. 2019).

ASA fails to appreciate that vacating the entire Project would risk environmental harm. Given that southwest Oregon is vulnerable to wildfires, there has never been a higher need for small diameter thinning and prescribed fire to "reduce fuel loading and reduce the future risk of larger, uncontrolled wildfires." ECF No. 53 at 13. As Magistrate Judge Clarke acknowledged, the Project "provides for a broad program of admirable fire resilience and forest restoration work." *Id.* at 2. Furthermore, the Merits F&R explained that "[t]he parties appear to be three-quarters of the way to a successful resolution with a relatively small holdout delaying important action." *Id.* at 35. ASA remains the lone holdout to halt important work. As the wildfire season continues to rage on, preventing the type of work that the Court and remainder of the parties agree is beneficial, would risk environmental harm. *See* Decl. of Andy Geissler ¶¶ 13–14, 19 (ECF No. 11) (discussing need for Project to address impending fire risks).

Next, ASA fails to demonstrate that the legal errors related to the noncommercial activities are not easily curable. The Merits F&R primarily limited its findings of error to the commercial portions of the Project. ASA is correct that the Court briefly discussed other

focused on ensuring that the partial vacatur is aligned with the Merits F&R, adopted by this Court.

justifications for requiring an EIS on remand.  *See* ECF No. 53 at 30, 32.[2]  ASA focuses on the

Merits F&R's discussion of how, by design, the Program's use of DNAs "has an inherently high

degree of uncertainty about the proximate environmental impacts of the approved program of

work."  *Id.*  Notably, since the Merits F&R, this Court endorsed the BLM's use of DNAs that tier

to a programmatic EA in a challenge to the N126 Project.  *See Wildlands v. Adcock*, No. 6:22-

CV-00767-AA, 2025 WL 975179, at *3, n.3 (D. Or. Mar. 31, 2025) ("DNAs are recognized

procedural tools to document that the effects of particular BLM projects are covered by existing

NEPA documentation. BLM may prepare an EA for a program of work, then issue a decision on

the overall approach to that program, and then issue a DNA and decision for a specific action to

implement that approach.") (internal citations omitted).  Moreover, the conclusion that the use of

a DNA is highly uncertain does not demonstrate any serious error with respect to the entire

Project given that the BLM has already elected to rely on site-specific EAs (in lieu of DNAs)

and/or limit the scale and timing of the IVM Project on remand.  Second Burghard Decl. ¶ 3

(ECF No. 104-1) ("BLM will prepare project-level EA(s) for any future projects developed

under the IVM Program that include Near-term NSO, Long-term NSO, Fuels Emphasis, and/or

Ecosystem Resilience – Closed commercial forestry treatments in the Late-Successional Reserve

land use allocation").  The "uncertainty" that ASA fixates on to suggest the entire Project is

flawed, ECF No. 115 at 7, is not related to the IVM EA's analysis itself but rather how the IVM

Project's program of work is implemented—via site-specific EAs versus DNAs.  That can be

easily cured on remand, as demonstrated by the fact that the BLM has already committed to

doing so in certain circumstances.  Furthermore, ASA's concerns about public participation and

transparency would be addressed if DNAs are issued in the future.  The BLM engaged with the

public when issuing its Late Mungers DNA by opening public comment, hosting an

---

[2] Defendant-Intervenors object to the Amended Remedy F&R's recommendation that an EIS is required on remand because that depth of the agency's analysis should be subject to the BLM's discretion, particularly in light of the changed regulatory landscape.  *See* ECF No. 113 at 27–31.

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 7

informational webinar, and hosting a field trip. *See* AR_02422–23.[3]

Accordingly, the Amended Remedy F&R implicitly determined that the legal errors were not serious given that the noncommercial activities are environmentally beneficial and there are no identified barriers to the BLM in reaching the same decision regarding noncommercial treatments on remand.

> **2.      Disruptive consequences would result if the noncommercial activities were vacated.**

Additionally, there would be disruptive consequences that outweigh the errors associated with the NEPA claims. ASA was on notice that noncommercial work could begin as early as 2024. ECF No. 55 at 3. Since June 2025, the BLM has implemented 764 acres of small-diameter thinning and 752 acres of prescribed fire. Fed. Def.'s Remedy Br. at 17 (ECF No. 79). The BLM's Remedy Brief explained that shutting down the ongoing commercial projects would have "cascading effects across a half-dozen local conservation partners." *Id.* Specifically, the BLM explained that financial investments would be lost to the following partners—Grayback Forestry, Lomakatsi Restoration Project, Klamath Bird Observatory, Klamath-Siskiyou Oak Network, Southern Oregon Forest Restoration Collaborative, and Rogue Forest Partners. *Id.*

Defendant-Intervenors also have an interest in this noncommercial work continuing because AFRC member Murphy Company is the high bidder for the Late Mungers and Penn Butte Timber Sales, which both include small diameter thinning and prescribed burning as part of the timber sale activities. *See* ECF No. 11 ¶ 15; ECF No. 80 at 14 n.10. In its objections, ASA alleges that although it supports these noncommercial treatments in the abstract, allowing them to move forward under this iteration of the Project would "risk more harm to those landscapes than vacatur." ECF No. 115 at 13. According to ASA, it is merely "an assumption that noncommercial treatments under the [Project] will not have significant environmental

---

[3] As Defendant-Intervenors explain in their objections, this Court should not require an EIS on remand. *See* ECF No. 113 at 27–31. Regardless of whether the Court agrees with that argument, ASA's public participation and transparency concerns should be resolved on remand through participation during the EIS process or during the issuance of DNAs.

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 8

impacts." *Id.*  Tellingly, however, ASA has been operating under that assumption for the better part of two years as the risk has not compelled ASA to seek injunctive relief and halt the noncommercial treatments that have been ongoing since 2025.  Because the BLM is likely to substantiate the noncommercial treatments on remand, vacating those treatments as ASA requests will result in an interim change to the status quo that will be changed itself.  That temporary disruption, which is likely to be lifted after remand, favors no vacatur.  *See Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (vacatur is informed by "the disruptive consequences of an interim change that may itself be changed").  In short, ASA's process concerns under NEPA do not outweigh the disruptive consequences to these beneficial noncommercial treatments.

C.     The BLM's IVM EA Need Not Be Vacated.

ASA is also wrong to suggest that Defendant-Intervenors' position that the NEPA documents should not be piecemealed supports the need to vacate the entire Project.  *See* ECF No. 115 at 10.  Defendant-Intervenors' position is simple—the IVM EA and FONSI and the Late Mungers DNA must be in place in the interim, in their entirety, for the BLM to implement the time-sensitive, noncontroversial treatments.  This approach will allow the BLM to address the errors identified by the Court on remand, while allowing important work to continue without wasting valuable resources or risking environmental harm.

Avoiding piecemealing is consistent with relevant caselaw and is logistically ideal.  The proper mechanism to support the Court's equitable relief is to partially vacate the IVM and Late Mungers Decision Records rather than the agency's NEPA documents.  *See, e.g., League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10–CV–01397–SI, 2012 WL 13042847, at \*1, \*5 (D. Or. Dec. 10, 2012) (partially vacating the Forest Service's Record of Decision, which would allow "the continued use of herbicides on lands identified during the 1992 and 1994 environmental assessments" and noxious weed management activities); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 06-CV-4884 SI, 2011 WL 337364, at \*10 (N.D. Cal. Jan. 29, 2011) (partially vacating the BLM's Record of Decision

in light of NEPA and FLPMA violations).  Piecemealing the programmatic NEPA analysis is not ideal "due to the administrative complexities that would result" and because the document is a "'cohesive unit' that cannot be easily picked apart and altered." *Swan View Coal. v. Haaland*, No. 22-CV-96-M-DLC, 2024 WL 3219206, at *18 (D. Mont. June 28, 2024).  Here, as demonstrated in Defendant-Intervenors' Objections, the IVM EA cannot be separated into commercial and noncommercial prescriptions because it analyzes various prescription types, and their corresponding impacts on certain resource conditions, together.  *See* ECF No. 113 at 26 (citing AR_02627–33).

ASA's attempt to analogize this case with Judge Kasubhai's recent remedy decision in the challenge to the BLM's Blue & Gold Project is misguided.  *See Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, No. 6:24-CV-01641-MTK, 2026 WL 1346855, (D. Or. May 14, 2026), *reconsideration denied,* No. 6:24-CV-01641-MTK, 2026 WL 1998555 (D. Or. July 9, 2026).  In *Cascadia Wildlands*, the court determined that the BLM violated FLPMA and NEPA by failing to demonstrate compliance with the Resource Management Plan's "Protected Tree Standard," which provides that "the BLM would retain all trees that are both greater than or equal to 40 inches [diameter and breast height] and that the BLM identifies were established before 1850." *Id*., at *4, *11–*13.  The court elected to vacate the Blue & Gold EA, FONSI and Decision Record in its entirety in light of both the FLPMA and NEPA violations.  *Id*., at *15.  In declining Federal Defendants' and Defendant-Intervenors' separate motions for reconsideration on the appropriate remedy, the court further explained that the legal errors were serious because of "the real risk of ecological disruption posed by BLM's Plan to harvest those areas without adequately considering the presence of, and ensuring the retention of, ecologically significant old-growth trees," which "have grown to their massive size over hundreds of years, provide a critical source of habitat for protected species and other environmentally significant benefits." *Cascadia Wildlands*, 2026 WL 1998555, at *4.[4]

---

[4]  Defendant-Intervenors AFRC and AOCC were parties in the Blue & Gold case and note that the deadline to appeal the decision, including the remedy ruling, has not passed.

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 10

*Cascadia Wildlands* is not informative to the situation here because the legal errors are less serious and the action at issue is environmentally beneficial. The BLM's legal errors only relate to procedural NEPA claims, not substantive violations under FLPMA. Moreover, the noncommercial work only involves the removal of small diameter trees, not older and large trees that take years to replace. The noncommercial work benefits the landscape by reducing wildfire risk in an extremely wildlife prone area. Even "ASA recognizes that some landscapes in the region could benefit from certain noncommercial treatments…." ECF No. 115 at 12. Because ASA has failed to point to any real environmental risk if these time-sensitive activities are implemented in the interim while the BLM corrects the legal errors on remand, full vacatur would be inappropriate.

Accordingly, as explained in Defendant-Intervenors' Objections, the entire IVM EA should be left in place on remand. ECF No. 113 at 23–27.

## IV.    CONCLUSION

The important takeaway from this objection process is that the Court must ensure that the remedy reflects the equities of its merits ruling. As Defendant-Intervenors demonstrated in their Objections, Magistrate Judge Clarke recommends vacating more commercial treatments than found to be tethered to a legal violation. ASA argues that more vacatur is necessary. ASA remains the only participant in this litigation—including Magistrate Judge Clarke and this Court—that refuses to acknowledge the benefit of the Project's noncommercial treatments. The BLM committed no serious errors pertaining to the noncommercial treatments and the disruptive consequences of vacatur demonstrate that partial vacatur is the appropriate remedy here.

Defendant-Intervenors reiterate that the Court should modify Magistrate Judge Clarke's Amended Remedy F&R and enter the following remedy order:

(1) Partially vacate the IVM Decision Record and Late Mungers Decision Record. Partial vacatur is limited to the Ecosystem-Open and Intermediate treatments in the LSR.

(2) The noncommercial activities under the IVM Decision Record and Late Mungers

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 11

Decision Record are not vacated, and the BLM may continue to authorize DNAs disclosing and authorizing site-specific implementation of these activities.

(3) The IVM EA, IVM FONSI and Late Mungers DNA are remanded without vacatur for further proceedings consistent with the Merits F&R and this Court's Merits Order.

Dated this 12th day of August, 2026.

/s/ Sara Ghafouri
SARA GHAFOURI, OSB #111021
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
sghafouri@amforest.org

DOMINIC M. CAROLLO, OSB #093057
Carollo Law Group LLC
Mail:   P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
dcarollo@carollolegal.com

*Attorneys for Defendant-Intervenors*

**CERTIFICATE OF COMPLIANCE**

The preceding memorandum complies with the applicable word-count limit under LR 7-2(b), because it comprises 3,992 words, based on the word-count of the word processing system used to prepare the memorandum.  This word count includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, acronym list, motion, signature block, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I, Sara Ghafouri, hereby certify that I, on August 12, 2026, caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 12th day of August, 2026.

/s/ Sara Ghafouri
Sara Ghafouri

*Attorney for Defendant-Intervenors*

DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF APPLEGATE SISKIYOU ALLIANCE'S OBJECTIONS TO FINDINGS AND RECOMMENDATION - 13